UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TODD ANTHONY CULVER,

    Petitioner,

v.

JOSHUA HIGHBERGER,

    Respondent.

Case No. 6:21-cv-01212-HZ

OPINION AND ORDER

Thomas J. Hester
Office of the Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Respondent

1    - OPINION AND ORDER

**INTRODUCTION**

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 and challenges his state court convictions on grounds that his trial counsel rendered ineffective assistance. For the reasons that follow, the Petition (ECF No. 1) is denied.

**BACKGROUND**

Petitioner physically and sexually assaulted his wife, Stacey Culver, on January 1, 2016. As a result, he was charged with attempted murder, unlawful sexual penetration in the first degree, sexual abuse in the first degree, two counts of strangulation, four counts of assault in the fourth degree constituting domestic violence, menacing constituting domestic violence, four counts of harassment, attempted rape in the first degree, pointing a firearm at another, unlawful use of a weapon, coercion, and resisting arrest. Resp't Ex. 102 (ECF No. 15-1).

Trial counsel was appointed and filed notice of a justification defense. *See* Resp't Ex. 120. Prior to trial, new trial counsel was appointed. Petitioner pleaded guilty to resisting arrest and proceeded to trial on the remaining counts.[1] Resp't Ex. 103.

**I.    Trial Proceedings**

At a bench trial, Ms. Culver testified that, in the week leading up to Christmas in 2015, she and Petitioner had agreed to divorce. Trial Tr. at 49 (ECF No. 16-1).[2] Petitioner became angry and, using his superior size,[3] pinned her to the ground and strangled her for 20-30 seconds before letting go. *Id.* at 49-51.

---

[1] The State also dismissed a charge of criminal mischief in the third degree. Resp't Ex. 102, Trial Tr. at 28, 1014.

[2] Trial Transcript page numbers refer to the ECF page numbers stamped at the top of the page.

[3] Ms. Culver testified that Petitioner weighed 240 pounds and was 6'1" tall, and that she weighed 160 pounds and was 5'7" tall. Trial Tr. at 54.

2    - OPINION AND ORDER

The couple nevertheless continued to live together. On December 31, 2015, Petitioner and Ms. Culver began drinking early in the day. *Id*. at 58. That evening, Ms. Culver attended a neighbor's New Year's Eve party alone where she had a "fair amount" to drink. *Id*. at 60-62. She left the party after midnight and slept several hours in her truck because the front gate to her property was locked. *Id*. at 63. In the morning, she found the front door locked and Petitioner would not let her in, so she kicked in the door. *Id*. at 63-64. She discovered her belongings "piled up into a big heap on the floor [of the bedroom] and some things ripped up and some things broken and destroyed." *Id*. at 66.

Ms. Culver testified that she went to bed and woke up around 1:00 p.m. *Id*. at 67. Petitioner appeared calm but began to get "more and more angry" that she had attended the party on her own. *Id*. at 67-68. He drank an entire bottle of champagne, threatened to kill her, kicked her, punched her, screamed at her, threw her phone at her, grabbed her hair, bashed her head onto the floor "over and over and over," and spit on her. *Id*. at 67-70. He kicked her five times on her tailbone where she had sustained an injury the week before. *Id*. at 70-71. He pinned her to the ground and strangled her. *Id*. at 72. Petitioner tore Ms. Culver's clothes off and told her he was going to rape her, and then forcefully digitally penetrated her and bit her breasts. *Id*. at 72-73. She admitted the entire incident was a "blur" and the order of events "may not be exact." *Id*. at 69, 72.

She asked Petitioner for aspirin, and he poured a bottle of aspirin and beer on her. *Id*. at 74. Petitioner retrieved a shotgun from the bedroom, saying he was "going to end it." *Id*. at 74-75. He racked it, pointed it at Ms. Culver's head and said, "I'm going to blow your head off." *Id*. at 75-76. Instead, Petitioner walked past her and into the living room. *Id*. at 76. At that point, Ms. Culver put on sweatpants, boots and a jacket and drove to the police department to report the assault. *Id*. at 76-77.

3    - OPINION AND ORDER

On cross-examination trial counsel pointed out certain inconsistencies with Ms. Culver's trial testimony, including the number of times Petitioner kicked her in her tailbone, whether he poured vodka or just beer on her, whether he threatened to kill her or others, how much and what Petitioner had to drink, and what color clothes she was wearing at the time of the assault. *Id*. at 89-101, 111-12, 133-34. Specifically, she asked Ms. Culver about the pajama pants she was wearing. Ms. Culver had previously identified the torn bra, sweater and camouflage pajama pants she had worn at the time of the assault. *Id*. at 79-80. However, she told police she had been wearing a gray bra, gray boxer briefs and gray pajama pants. *Id*. at 111. Ms. Culver clarified, explaining:

> I had said gray, but clearly they're camo or some sort of animal print. At that moment, I really did not recall specifically which pants I was wearing.

*Id*. at 112. She later acknowledged that she believed "police took the wrong pants" into evidence when they searched the Culver residence. *Id*. at 133-34.

Crook County Sheriff's Deputy Ryan Seaney testified to evidence seized at the Culver's residence. Among other items, he testified that he seized "a pair of camouflaged kind of colored sweatpants with gray underwear wrapped into them," from the front living room area. *Id*. at 473. Deputy Seaney testified that the items were logged into evidence as "sweat pants, underwear." *Id*. at 690; *see also id*. at 657-58, 663, Resp't Ex. 112 at 2.

Petitioner also testified at the bench trial. His version of the events corroborated some of Ms. Culver's testimony, but he denied strangling, threatening to kill or assaulting Ms. Culver. Trial Tr. at 788. He admitted that he had been drinking on December 31, and testified that he repeatedly called and texted Ms. Culver throughout the evening and into the early morning hours, sending her nude, sexual photos he had taken of her, and threatening to send them to friends or post them to Facebook if she didn't answer him. *Id*. at 805-06, 815-17, 821-34, 909-18.

According to Petitioner, however, Ms. Culver was the initial aggressor of the dispute on January 1. *Id*. at 846. He testified that when Ms. Culver woke up, she was mad, stomped out of the bedroom and hit him in the face. *Id*. at 846-47. He hit her back, and they fought – they hit each other, he slapped her, and she kicked him in his knee. *Id*. at 847-48. He admitted that he "threw her to the floor," with enough force to rip off her shirt and tear her bra. *Id*. at 849-50. He testified that Ms. Culver got on top of him and hit him on both sides of his face and head, and that he bit her breasts to make her stop attacking him. *Id*. at 852-53. His teeth are "cracked and very sharp" and he intentionally bit hard enough to cause pain. *Id*. at 852. He denied that he raped her, pointed a shotgun at her or threatened to kill her. *Id*. at 856.

In her closing argument, trial counsel pointed out the inconsistencies in Ms. Culver's testimony and clothing evidence – specifically, whether Ms. Culver had been wearing the camouflage pajama pants recovered at the scene. *Id*. at 985-89, 1001-04. She argued there was "an assault . . . on both parties," and that "to some extent, in the beginning, some of [Petitioner's] actions could certainly be construed as self-defense." *Id*. at 1005. She acknowledged "[w]hether it went beyond that and constituted assault, we certainly leave that to the Court." *Id*. She argued that the evidence did not support "any sort of attempted murder allegation," and that the State had failed to carry its burden at trial. *Id*. at 992, 1004-05..

The trial court judge found Ms. Culver's testimony credible and Petitioner's testimony not credible. *Id*. at 1009, 1042. Petitioner was acquitted of attempted murder and convicted of all the other charged offenses. *Id*. at 1010-14. The trial court sentenced him to 160 months of imprisonment. *Id*. at 1043-55. Petitioner filed a notice of appeal but later moved for voluntary dismissal, Resp't Ex. 104, which the Oregon Court of Appeals granted, Resp't Ex. 105.

## II.    Post-Conviction Relief Proceedings

Petitioner next filed for post-conviction relief ("PCR") in Malheur County and filed an Amended Petition for PCR through appointed counsel. Resp't Exs. 106, 107. Petitioner raised two claims of ineffective assistance of trial counsel:

I.  Trial counsel failed to raise the defense of self-defense. It is ineffective assistance of counsel not to raise the defense of self-defense or to raise the defense and not support the claim.

II. Trial counsel failed to investigate and respond to Petitioner's detailed explanations of the persons involved in the case who were manufacturing evidence and tampering with evidence. Counsel failed to effectively cross-examine to expose manufactured evidence, tampered evidence, and perjury. This ensured that Petitioner did not have a fair trial.

Resp't Ex. 107 at 6. In support, Petitioner submitted his own affidavit, as well as an affidavit by an investigator he hired, Heather Carver, highlighting Ms. Culver's conflicting testimony and the inconsistent clothing evidence. Resp't Exs 111, 112. The State submitted an affidavit from trial counsel. Resp't Ex. 116.

The PCR court held an evidentiary hearing and denied relief. Resp't Exs. 126, 127. Specifically, the PCR court found Petitioner's and Ms. Carver's testimony not credible. Resp't Ex. 127 at 1. As to Ground One, the PCR court found trial counsel's testimony credible and that she "did give notice of self-defense and argued it to the extent that the evidence supported." *Id*. at 2. The PCR court stated trial counsel was wise to acknowledge that "the evidence at trial – including petitioner's own testimony – provided little or no support for self-defense," rather than "[lose] all credibility with the court by pretending otherwise." *Id*. As to Ground Two, the PCR court found that the inconsistent clothing evidence – specifically referring to "the fact that the evidence log describes 'sweatpants, underwear' and the actual sweatpants seized were colorful" – was "not evidence that anyone engaged in tampering or manufacturing of evidence." *Id*. at 3. Additionally,

the PCR court held that trial counsel performed competently when she "pointed out the discrepancies as appropriate, and used them to cast doubt on the victim's testimony and support the argument that the State had not met its burden of proof beyond a reasonable doubt." *Id*. The PCR court held that Petitioner had failed prove prejudice with respect to either ground. *Id*. at 2-3.

Petitioner appealed the PCR court's decision assigning error to the PCR court's denial of his claim that trial counsel was ineffective for not arguing the defense of self-defense at trial. Resp't Ex. 128. In a *pro se* supplemental brief, Petitioner argued that the PCR court erred in denying his claim that trial counsel "failed to investigate and respond to Petitioner's detailed explanations of the persons involved in the case who were manufacturing evidence and tampering with evidence, and failed to cross-examine." Resp't Ex. 129 at 3. The Oregon Court of Appeals affirmed the PCR court's decision without an opinion, and the Oregon Supreme Court denied review. Resp't Exs. 133, 134.

Petitioner now brings this *pro se* 28 U.S.C. § 2254 habeas corpus petition asserting the same two claims of ineffective assistance of counsel that he raised in his PCR proceedings. Pet. at 5, Ex. A. Respondent argues relief should be denied because the state court's denial of relief was not objectively unreasonable. *See* Resp. to Pet. (ECF No. 13). After the *pro se* petition was filed, the Court appointed counsel to represent Petitioner herein, and appointed counsel filed a supporting memorandum. *See* Br. in Supp. of Pet. (ECF No. 35).

## **DISCUSSION**

### III. The Merits

#### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable

7    - OPINION AND ORDER

application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A state court renders an unreasonable determination of the facts if it "plainly misapprehends or misstates the record in making its findings or where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Andrew v. Davis*, 944 F.3d 1092, 1107 (9th Cir. 2019) (internal quotations omitted). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in

the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the federal court independently reviews the record, it still lends deference to the state court's ultimate decision and will only grant habeas relief if the state court's decision was objectively unreasonable. *Harrington*, 562 U.S. at 98; *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

B. Analysis

In Ground One, Petitioner alleges trial counsel failed to raise the defense of self-defense. Pet. at 5, 14-16. In Ground Two, Petitioner alleges that trial counsel failed to investigate and respond to his "detailed explanations of the persons involved in the case who were manufacturing evidence and tampering with evidence," and alleges prosecutorial misconduct. *Id.* at 5, 17. Petitioner raised these claims in his PCR proceedings. Resp't Ex. 107. As mentioned in the Background of this Opinion, the PCR court denied relief on both grounds finding that Petitioner had failed to prove trial counsel performed deficiently and failed to prove prejudice. Resp't Ex. 127.

Respondent argues the PCR court's denial of relief was not objectively unreasonable, and the Court should deny relief on both grounds. Resp. to Pet. at 4. In his counseled brief in support of his Petition, Petitioner argues only that trial counsel was ineffective for failing to "meaningfully

9    - OPINION AND ORDER

investigate and effectively demonstrate the alleged victim's dubious credibility." Br. in Supp. of Pet. at 15. No such claim is contained within the Petition. As a result, the claim is not properly before the court for its consideration. *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner"); *Greene v. Henry*, 302 F.3d 1067, 1070 fn 3 (9th Cir. 2002) (a court need not consider claims not raised in the petition).

Even assuming Petitioner's argument that counsel failed to impeach Ms. Culver's testimony can be construed as a claim encompassed in Ground One, Ground Two or both,[4] the PCR court did not directly address it in its reasoned decision. *See* Resp't Ex. 127. Therefore, this Court conducts an independent review of the record.

### 1. Ineffective Assistance of Counsel

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686–687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id*. at 689. Second, the petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[4] In the supporting facts for Ground One, Petitioner argues that trial counsel failed to point out evidence that contradicted Ms. Culver's testimony and failed to expose "contradictions in the evidence and testimony." Pet., Ex. A at 2-3. In his supporting facts for Ground Two, Petitioner argues that trial counsel failed to present evidence that "would have shown many discrepancies between [Ms. Culver's] testimony and [her police] interview," and would have shown that "[Ms. Culver] had several different accounts of the alleged events." *Id*. at 3.

result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one which is sufficient to undermine confidence in the sentence petitioner received. *Id*. at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

In his Brief in Support of Petition, Petitioner argues that trial counsel's "failure to conduct a thorough investigation, secure testimony of available witnesses and attack Ms. Culver's credibility" amounted to constitutionally deficient performance. Br. in Supp. of Pet. at 18. Petitioner argues that trial counsel failed to appropriately question Ms. Culver and the officer who conducted the search of the Culver's residence. *Id*. at 18. He argues that Ms. Culver's account of the events at issue were "internally inconsistent," and that trial counsel's "failure to develop and argue additional evidence impugning her credibility prejudiced [him]." *Id*. Petitioner argues that the PCR court's credibility determinations demonstrate that "the PCR Court either did not review, or did not understand the facts before him," and the decision is therefore not entitled to deference. *Id*. at 16.

On cross-examination, trial counsel addressed several inconsistencies in Ms. Culver's trial testimony. She asked Ms. Culver about the facts she testified to at trial that were contradictory to or not included in a petition for restraining order she filed on January 4, three days after the assault. *See* Trial Tr. at 91-95, 112. Trial counsel confirmed that Ms. Culver was able to freely leave her residence despite Petitioner's alleged "threats looming over [her] head." *Id*. at 96-97. She highlighted that Ms. Culver failed to report certain facts relating to the January 1 dispute to the police, and failed to report that Petitioner strangled her before Christmas to anyone, including family or police. *Id*. at 99-111, 137-38.

11    - OPINION AND ORDER

With respect to the clothing evidence, trial counsel specifically asked if Ms. Culver told police that she had been wearing a gray sweatshirt, gray bra, gray boxer briefs and gray pajama pants. *Id*. at 111. Ms. Culver responded:

> I had said gray, but clearly they're camo or some sort of animal print. At that moment, I really did not recall specifically which pants I was wearing.

*Id*. at 112. Later, Ms. Culver acknowledged that she believed the police had seized the "wrong pants," but failed to tell them that. *Id*. at 133-34. Trial counsel cross-examined Deputy Seaney, who testified that "[t]he pants we located weren't gray . . . [they] were the camouflage." *Id*. at 662. She also cross-examined another officer who participated in the search of the Culver's residence about the clothing evidence. *Id*. at 657-59. Trial counsel later established that Ms. Culver had given the camouflage pants at issue to Petitioner as a Christmas gift. *Id*. at 845. Trial counsel addressed the inconsistencies in Ms. Culver's testimony as well as the clothing evidence in her closing arguments, arguing that the State had not met its burden of proving the allegations beyond a reasonable doubt. *Id*. at 973-1005.

Upon conducting an independent review of the record, the Court finds that it was reasonable for the PCR court to conclude that trial counsel's performance did not fall below an objective standard of reasonableness. Moreover, even if trial counsel had performed deficiently, Petitioner cannot show that he suffered prejudice. Petitioner's own testimony established that, even if Ms. Culver was the initial aggressor, Petitioner hit her, slapped her, kicked her, threw her to the floor with enough force that he ripped off her shirt and tore her bra, and bit her breasts intending to hurt her. *Id*. at 849-53. Thus, it was reasonable for the PCR court to conclude that Petitioner failed to prove that "if counsel had offered additional evidence or argued self-defense more intensely, that it could have had a tendency to affect the outcome of the trial." Resp't Ex. 127 at 2.

As such, this Court finds that the state PCR decision denying relief was not objectively unreasonable and denies relief.

### 2. *Unargued Claims*

To the extent that Petitioner did not develop the remainder of the claims encompassed in Grounds One and Two and has otherwise failed to challenge Respondent's arguments that relief should be denied, Petitioner has failed to sustain his burden of demonstrating entitlement to habeas relief on those grounds. *See* 28 U.S.C. § 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case). Accordingly, the Petition is denied in its entirety.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (ECF No. 1) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

June 30, 2023
DATE

*Marco Hernandez*
Marco A. Hernandez
United States District Judge

13   - OPINION AND ORDER